# UNITED STATES DISTRICT COURT
for the
District of Colorado

| | | |
|---|---|---|
| In the Matter of the Search of<br>The ground floor of 2925 Marion Dr., Colorado Springs, CO 80909, more fully described in Attachment A, attached hereto, | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 20-sw-1138-SKC |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the ___State and___ District of ___Colorado___ *(identify the person or describe property to be searched and give its location)*:

**SEE "ATTACHMENT A"**, which is attached to and incorporated in this Application and Affidavit

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

**SEE "ATTACHMENT B"**, which is attached to and incorporated in this Application and Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

X evidence of a crime;

X contraband, fruits of crime, or other items illegally possessed;

X property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of 18 U.S.C. § 471 and 472, and the application is based on these facts:

X Continued on the attached affidavit, which is incorporated by reference.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*s/ Thomas Bouras*
_____
*Applicant's signature*

Thomas Bouras, Special Agent
_____
*Printed name and title*

Sworn to before me and:   ☐ signed in my presence.
☒ submitted, attested to, and acknowledged by reliable electronic means.

Date:  09/24/2020
_____
*Judge's signature*

City and state:  Denver, CO

Magistrate Judge S. Kato Crews
_____
*Printed name and title*

**ATTACHMENT A**

**DESCRIPTION OF LOCATION TO BE SEARCHED**

The Subject Premises is the ground floor of the residence located at 2925 Marion Dr., Colorado Springs, CO 80909.  The residence located at that address is divided into two separate living areas, 1) the ground floor and 2) the basement.  The Subject Premises as defined herein does not include the basement of the property.

The residence located at 2925 Marion Dr., Colorado Springs, CO 80909 is more particularly identified as a multi-story home residence with a light purple exterior color, a basement and ground floor, brown roof, white window frames, a front lawn full of rocks and stones, six steps along a concrete path leading to a white framed front door, the number"2925" displayed on the right side of the front door under a single light. The place to be searched includes the ground floor of 2925 Marion Dr., Colorado Springs, CO 80909, which JOSHUA OLIVE rented from Jay Acosta.

1

ver 9/20

**ATTACHMENT B**

**DESCRIPTION OF ITEMS TO BE SEIZED AND SEARCHED**

The following items, located at the Subject Premises that constitute evidence of the commission of, contraband, the fruits of crime, or instrumentalities of violations of 18 United States Code Sections 471 and 472 (hereinafter "Subject Offense(s)") and occurring between a date unknown and 24 September 2020, including the following:

1.  Records and information relating to counterfeit U.S. currency and its production, including any instrumentalities.

    Records and information pertaining to identity theft and/or the creation of forged and/or counterfeit identification.

    Records and information that tend to establish ownership or use of digital devices and ownership or use of any Internet service accounts accessed to commit the Subject Offenses, to include credit card bills, telephone bills, correspondence and other identification documents.

    Records and items that show dominion and control of the property searched, to include utility bills, telephone bills, correspondence, rental agreements and other identification documents.

2.  Computers, which include all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices capable of performing logical, arithmetic, or storage functions, any physical object upon which computer data can be recorded, including desktop and laptop computers, computer hardware, computer software, volatile data, cellular telephones, tablets, server computers, gaming devices, network hardware,

1

ver 9/20

hard disk drives, RAM, floppy disks, flash memory, CDs, DVDs, and other magnetic or

optical storage media, as well as, computer related documentation, computer passwords

and data security devices, digital communications devices, cameras, videotapes, video

recording devices, video recording players, and video display monitors, digital input and

output devices such as keyboards, mouse(s), scanners, printers, monitors, electronic

media and network equipment, modems, routers, connection and power cords, and

external or connected devices used for accessing computer storage media that was used to

commit or facilitate commissions of the Subject Offense(s) (collectively hereinafter,

"COMPUTER").

DEFINITIONS:

As used above, the terms "records" and "information" include all of the foregoing items of

evidence in whatever form and by whatever means they may have been created or stored,

including any form of computer or electronic storage (such as hard disks or other media that can

store data); any handmade form (such as writing, drawing, painting); any mechanical form (such

as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides,

negatives, videotapes, motion pictures, or photocopies).

2

## AFFIDAVIT

I, Thomas Bouras being duly sworn, hereby depose and state that the following is true to the best of my information, knowledge, and belief:

### INTRODUCTION AND AGENT BACKROUND

1.  I am a Special Agent with the United States Secret Service, and have been since June 6, 2019.  I graduated from the University of North Texas with a Bachelor's of Science in Kinesiology.  I then served in the United States Army for 3 years and 8 months where I held the military occupational specialty of 19A (Armor Officer).  I graduated from the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynco, GA (12 weeks).  I also graduated from the Special Agent Training Course at the United States Secret Service Rowley Training Center in Laurel, MD (20 Weeks).  As part of my duties, I investigate criminal violations relating to Manufacturing of Counterfeit, in violation of Title 18, United States Code, Section 471 and Title 18, United States Code, Section 472.  I have received training and instruction in the field of investigation of Manufacturing of Counterfeit and have had the opportunity to participate in investigations relating to criminal organizations and individuals targeting the nation's critical financial infrastructure and payment systems

2.  This affidavit is submitted in support of an application for a search warrant for the place described in Attachment A (hereinafter "Subject Premises,"), and the computer(s) located therein, there being probable cause to believe that located in the place described in Attachment A are items described in Attachment B, being evidence, fruits, and

1

ver 9/20

instrumentalities of violations of 18 United States Code, Sections 471 and 472 (the "Subject

Offense(s).").

3. Because this affidavit is being submitted for the limited purpose of securing a search warrant,

I have not included each and every fact known to me concerning this investigation. I have

set forth facts that I believe are necessary to establish probable cause to believe that evidence,

fruits, and instrumentalities of violations of the Subject Offense(s) are presently located at the

Subject Premises.

4. The information contained within the affidavit is based on my training and experience, as

well as information imparted to me by other law enforcement officers involved in this

investigation.

## **TECHNICAL TERMS**

5. Based on my training and experience, I use the following technical terms to convey the

following meanings:

6. Storage medium: A storage medium is any physical object upon which computer data can be

recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and

other magnetic or optical media.

7. In this affidavit, the terms "computers" or "digital storage media" or "digital storage devices"

may be used interchangeably, and are intended to include all types of electronic, magnetic,

optical, electrochemical, or other high speed data processing devices capable of performing

logical, arithmetic, or storage functions, any physical object upon which computer data can

be recorded, including desktop and laptop computers, computer hardware, computer

software, volatile data, cellular telephones, tablets, server computers, gaming devices, network hardware, hard disk drives, RAM, floppy disks, flash memory, CDs, DVDs, and other magnetic or optical storage media, as well as, computer related documentation, computer passwords and data security devices, digital communications devices, cameras, videotapes, video recording devices, video recording players, and video display monitors, digital input and output devices such as keyboards, mouse(s), scanners, printers, monitors, electronic media and network equipment, modems, routers, connection and power cords, and external or connected devices used for accessing computer storage media that was used to commit or facilitate commissions of the Subject Offense(s) (collectively hereinafter, "computers").

**COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS**

8.  Printers are a peripheral device which make a persistent representation of graphics or text, usually on paper. Outputs from printers can be in both human readable or non-human readable forms. Printers can be found in multifunctioning devices such as printer/scanner combination devices. Some printers may incorporated digital storage capabilities or networking functions to communicate with other devices.

9.  Your Affiant knows from training and experience that search warrants of residences usually reveal items that tend to show dominion and control of the property searched, to include utility bills, telephone bills, correspondence, rental agreements and other identification documents.

ver 9/20

## INVESTIGATION

10. On November 20, 2019. JOSHUA OLIVE drove with DYLAN O'BRIEN to the Safeway grocery store located at 12442 W. Ken Caryl Ave., Littleton, CO. OLIVE proceeded into the Safeway, went to the customer service desk, and attempted to purchase a Green Dot Card with nine twenty-dollar U.S. notes. The employee interacting with OLIVE identified four of the bills as suspected counterfeit notes.  She walked OLIVE over to the Wells Fargo branch located within the Safeway to have him fill out a counterfeit receipt. The employee also contacted the Jefferson County Sheriff's Office to report the attempted use of counterfeit currency.

11. OLIVE told the Wells Fargo employees that he sold a pair of earbuds in the Safeway parking lot and that he was paid with the cash that included the counterfeit currency he was using to purchase the Green Dot Card. The Wells Fargo employees gave OLIVE back the five genuine twenty dollar notes, but kept the counterfeit notes to give to law enforcement. A Wells Fargo employee then asked OLIVE for identification. OLIVE told the employee that he forgot his identification and told the employee his name was Joshua Shepherd with a date of birth of 02/14/1991. When given the counterfeit receipt from the Wells Fargo employee, OLIVE signed the back of the form "Joshua Shepherd". While the Wells Fargo employee finished the counterfeit receipt paperwork, OLIVE appeared nervous, said that he was on a lunch break from work, and quickly left the Safeway. A Safeway employee walked out to the Safeway parking lot and observed OLIVE get into the driver's side of a black colored Jeep.  O'Brien was riding in the front passenger seat of the Jeep.

12. Deputies from Jefferson County Sheriff's Office (Jeff Co SO) responded to the Safeway to take witness statements and place the counterfeit currency and counterfeit receipt into evidence. Other

4

deputies identified OLIVE's vehicle and attempted to conduct a traffic stop. However, OLIVE failed to yield to the deputies and sped away. Deputies initially gave pursuit but discontinued the pursuit for safety reasons. The deputies later identified OLIVE's vehicle parked in a neighborhood and attempted another traffic stop. OLIVE then fled the scene on foot while O'BRIEN remained in the passenger side of the Jeep. Deputies were unable to locate OLIVE. O'BRIEN was briefly detained and taken to the Jefferson County South Precinct substation, but was later released. Deputies were able to determine that the Jeep was registered to JOSHUA BRIAN OLIVE, date of birth 12/27/1988, and forwarded the information to the deputies responding to the Safeway.

13. The deputies at the Safeway showed an image of OLIVE to the Safeway employees who identified OLIVE as the person who tried to pass the counterfeit notes. Deputies conducted an inventory search of OLIVE's Jeep prior to it being impounded. During the search, the deputies found multiple backpacks and storage bins. Inside one storage bin found in the trunk of the Jeep was a black Canon/Pixma printer/scanner, multiple pages of paper with forged twenty-dollar U.S. notes on them, a wood ink print board, and a sheet long scale. A black, red, and white Swiss Gear backpack located in the Jeep had a silver HP Laptop serial number 8CG84537LB (later confirmed by Jefferson County Sheriff's Office Dispatch to be stolen out of Boulder County, CO), loose sharpies, a Crown Royal bag with various writing/marking utensils, a black and red thumb drive, electronic cable, a black binder with forged twenty dollar U.S. notes on paper inside, and a black and blue hard drive.

14. An additional black Acer backpack found in the driver's side seat of the vehicle contained a silver Apple Mac Book Air Laptop serial number FVFYC1K1JK7M, a brown and tan bag containing

5

multiple acrylic inks, acrylic fluids, and wood craftsman sticks. The deputies also found a black fanny pack in the front passenger seat of OLIVE's Jeep containing an Amazon Kindle, electronic cords, and a plain white credit card. On the front passenger floor board, the deputies discovered an open Auto Led box with twenty-two $20 U.S. notes inside (the $20 notes were bagged into evidence separately from the box). Inside the Jeep's glove box, the deputies found a wallet containing an identification card with DYLAN O'BRIEN, date of birth 12/15/1995 listed on it. In the back seat of the Jeep on the driver's side, the deputies found an additional backpack which contained a black passport carrier that held seventy counterfeit $20 notes (Surveillance video of the incident at Safeway shows that OLIVE drew the money presented to the Safeway and Wells Fargo employees from a passport carrier he retrieved from a backpack.) On the back seat floor board, the deputies found an Under Armor backpack containing a Microsoft laptop serial number JW2L23MFB1C, half a counterfeit note, Amsterdam acrylic ink, a red USB thumb drive, a gray USB Google device, a social security card for "Jameson Drew Decker", SSN xxx-xx-3328 (later confirmed to belong to the son of a robbery victim), a small gray/black bag containing a small clear plastic bag with residue, and jungle-juice nail polish remover. Underneath the driver's seat, the deputies found multiple sheets of paper with counterfeit twenty-dollar U.S. notes on them as well as a Smith and Wesson Bodyguard .380 pistol serial number KAM1473 (later confirmed to be stolen from Jaqueline Decker, date of birth 12/31/1979, mother of Jameson Decker whose social security card was found in OLIVE's Jeep).

15. In the Jeep's center console the deputies found thirteen counterfeit twenty-dollar U.S. notes. The USSS took over the investigation because it involved counterfeit U.S. currency and took possession of all relevant evidence from the November 20, 2019 incident in Jefferson County, CO.

ver 9/20

16. On December 12, 2019, JOSHUA OLIVE and DYLAN O'BRIEN were attempting to go through security at Denver International Airport. JOSHUA OLIVE's luggage was stopped by a Transportation Security Administration (TSA) Officer Joyce Forry, after OLIVE's luggage had set off the security monitor alarm. Officer Forry then conducted a secondary screening of JOSHUA OLIVE's luggage.  During that secondary screening, Officer Forry observed sheets of uncut printed U.S. twenty dollar bills. Officer Forry contacted her supervisor about the matter who then contacted the Denver Police Department (DPD). DPD Officer Charles W. Jones identified the luggage as belonging to JOSHUA OLIVE and learned that OLIVE was enroute to Gate C27. Officer Jones instructed other DPD officers to make contact with him at Gate C27. DYLAN O'BRIEN was traveling with JOSHUA OLIVE while OLIVE was moving towards Gate C27. Upon contact with the DPD officers, JOSHUA OLIVE was taken into custody where DPD officers learned he had five outstanding arrest warrants. DYLAN O'BRIEN dropped his luggage and fled from the DPD officers while they contacted JOSHUA OLIVE. During an inventory search of JOSHUA OLIVE's roller bag luggage, DPD officers discovered a pair of grey pants with twenty-three finished and cut, counterfeit twenty dollar U.S. notes. The DPD officers also discovered multiple sheets of uncut/ unfinished counterfeit twenty dollar U.S. notes, a paper cutting board, blank linen business paper, a syringe, and a baggie containing suspected methamphetamine. Additionally, an Amazon Kindle serial number: 2ANXB5276 and a HP laptop serial number: 5CG92880H8 were found in OLIVE's roller bag luggage during the inventory search. A Samsung Galaxy Note 10 serial number: R37MA037MZXSH3 was found on OLIVE's person at the time of his arrest.

7

17. On September 2, 2020, a grand jury sitting in the district of Colorado returned a true bill of indictment including three charges against OLIVE relating to the counterfeiting activities described above.  An arrest warrant was issued pursuant to that indictment.  *See* 20-cr-00280-RM, [ECF-1 and 2].  However OLIVE remained at large.  On September 22, 2020, the honorable Judge Kato Crews approved a search warrant for the tracking of OLIVE's cell phone to assist with making the arrest on OLIVE.

18. On September 24, 2020 at approximately 0600, Special Agents from the Secret Service Denver Field Office and El Paso County Sheriff's Office Deputies were attempting to locate and arrest JOSHUA BRIAN OLIVE.  Through the Search Warrant provided to Verizon with OLIVE's cell phone location data, he was determined to be in the area of 2420 N Union Blvd, Colorado Springs, CO 80909. The Agents followed the Verizon location phone data and determined that the cellular telephone in question was traveling in a Silver Jeep Grand Cherokee with Colorado license plate BBM013. Agents followed.  Utilizing the Verizon data, Agents were able to locate and observe the Jeep, and followed the Jeep to a multi-story house located at 2925 Marion Drive, Colorado Springs, CO 80909.

19. At the house on Marion Drive, the Agents found the Jeep parked outside.  At that time the current Verizon cell phone location data showed that the cellular phone was inside the house. USSS Agents and El Paso County Sheriff's Deputies then created a perimeter around the house. The Agents encountered a male civilian outside the residence who identified himself as, Jay Acosta. Acosta told the Agents that he was the owner of the house at 2925 Marion Drive, Colorado Springs, CO 80909 and was renting the ground floor to JOSHUA OLIVE.

8

ver 9/20

According to Acosta, the basement and ground floor are divided by locked doors creating two distinct living areas. Acosta told the Agents that OLIVE did arrive in the house in the Silver Jeep Grand Cherokee and was inside the house currently. Agents and Deputies then knocked on the front door of the house, announced themselves as police, and instructed OLIVE to open the front door.

20. After several minutes of knocking and verbal commands, Agents asked Acosta if they could have the key code to the front door. Acosta, gave the code to the Agents who then opened the front door, but remained outside the home. From the open front doorway, the Agents could observe a printer in plain view sitting on a coffee table adjacent to a red/orange container of what appeared to be ink, and a paper cutting board. Additionally, the Agents could see two copies of an identification card printed side by side on a piece of paper towards the back of the room directly in front of the open front doorway. These items are significant in that printers, inks, and paper cutting boards are often used in conjunction with one another to produce counterfeit U.S. currency. OLIVE has on two previous incidents (described in paragraphs 10-16 above) been found in possession of counterfeit U.S. currency in various stages of completion both on his person and amongst his personal property along with printers, inks, and paper cutting boards. Because he has a history of producing counterfeit U.S. currency with the same combination of counterfeit producing materials observed during OLIVE's arrest on September 24, 2020, Agents believe these items are being used to produce more counterfeit currency

9

21. Additionally, on prior occasions, OLIVE has possessed altered and forged forms of identification, and has provided alias names while committing his crimes. The two printed identification cards on the same sheet of paper appeared to be in an intermediate state of completion and are consistent with the method OLIVE would have previously used to produce fraudulent identification cards.

22. The Agents again gave verbal commands for OLIVE to come out. OLIVE then slowly presented himself from around a corner on the inside of the home holding a phone in his right hand. The Agents instructed OLIVE to put the phone down and come outside. OLIVE then placed his phone on a stand and walked towards the Agents. Once outside, the Agents handcuffed OLIVE. One Agent moved OLIVE towards a vehicle away from the house to conduct a search of his person incident to arrest.   Other agents conducted a brief sweep of the home to ensure no other persons were present, and secured the home in order to seek this search warrant.  Agents and Deputies have been maintaining the security of the home to ensure no persons enter the home since the time of the arrest described above.

ver 9/20

## CONCLUSION

23. I submit that this affidavit supports probable cause for a warrant to search the Subject

Premises described in Attachment A, and seize the items described in Attachment B. I

declare under penalty of perjury that the foregoing is true and correct to the best of my

information, knowledge, and belief.


*s/ Thomas Bouras*

Thomas Bouras, Special Agent

United States Secret Service


SUBSCRIBED and SWORN before me this __24th__ day of __September__ 2020.


_____

UNITED STATES MAGISTRATE JUDGE



Application for search warrant was reviewed and is submitted by Daniel McIntyre, Assistant

United States Attorney.

ver 9/20

**ATTACHMENT A**

**DESCRIPTION OF LOCATION TO BE SEARCHED**

The Subject Premises is the ground floor of the residence located at 2925 Marion Dr., Colorado Springs, CO 80909.  The residence located at that address is divided into two separate living areas, 1) the ground floor and 2) the basement.  The Subject Premises as defined herein does not include the basement of the property.

The residence located at 2925 Marion Dr., Colorado Springs, CO 80909 is more particularly identified as a multi-story home residence with a light purple exterior color, a basement and ground floor, brown roof, white window frames, a front lawn full of rocks and stones, six steps along a concrete path leading to a white framed front door, the number"2925" displayed on the right side of the front door under a single light. The place to be searched includes the ground floor of 2925 Marion Dr., Colorado Springs, CO 80909, which JOSHUA OLIVE rented from Jay Acosta.

1

**ATTACHMENT B**

**<u>DESCRIPTION OF ITEMS TO BE SEIZED AND SEARCHED</u>**

The following items, located at the Subject Premises that constitute evidence of the commission

of, contraband, the fruits of crime, or instrumentalities of violations of 18 United States Code

Sections 471 and 472 (hereinafter "Subject Offense(s)") and occurring between a date unknown

and 24 September 2020, including the following:

3.  Records and information relating to counterfeit U.S. currency and its production,

    including any instrumentalities.

    Records and information pertaining to identity theft and/or the creation of forged and/or

    counterfeit identification.

    Records and information that tend to establish ownership or use of digital devices and

    ownership or use of any Internet service accounts accessed to commit the Subject Offenses,

    to include credit card bills, telephone bills, correspondence and other identification

    documents.

    Records and items that show dominion and control of the property searched, to include utility

    bills, telephone bills, correspondence, rental agreements and other identification documents.

4.  Computers, which include all types of electronic, magnetic, optical, electrochemical, or

    other high speed data processing devices capable of performing logical, arithmetic, or

    storage functions, any physical object upon which computer data can be recorded,

    including desktop and laptop computers, computer hardware, computer software, volatile

    data, cellular telephones, tablets, server computers, gaming devices, network hardware,

1

hard disk drives, RAM, floppy disks, flash memory, CDs, DVDs, and other magnetic or optical storage media, as well as, computer related documentation, computer passwords and data security devices, digital communications devices, cameras, videotapes, video recording devices, video recording players, and video display monitors, digital input and output devices such as keyboards, mouse(s), scanners, printers, monitors, electronic media and network equipment, modems, routers, connection and power cords, and external or connected devices used for accessing computer storage media that was used to commit or facilitate commissions of the Subject Offense(s) (collectively hereinafter, "COMPUTER").

## DEFINITIONS:

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

2

ver 3/20